**FAIM INFORMATION SERVICES, INC., et al., Plaintiffs,**

v.

**William G. BORCHERT et al., Defendants.**

**No. 72 Civ. 4160.**

United States District Court, S. D. New York.

June 4, 1975.

Rabin & Silverman, New York City, for plaintiffs.

Richard G. Green, New York City, for defendant Conant & Co. Public Relations, Inc.

Cowen, Ullman & Shiff, New York City, for defendants John O. Doerge, Saunders, Stiver & Co., George R. Herzog and James J. Gilligan.

Booth, Lipton & Lipton, New York City, for defendants William G. Borchert, Barbor-Haft, Inc., Artists Entertainment Complex, Inc., Herbert Haft and Walter Barrett.

Orans, Elsen & Polstein, New York City, for defendants Sidney Gross and Gross & Associates Public Relations, Inc.

Surrey, Karasik, Morse & Seham, New York City, for defendants Sidney Shore and Sidney Shore Associates, Ltd.

Reavis & McGrath, New York City, for defendant Harper Sibley, Jr.

## OPINION

ROBERT L. CARTER, District Judge.

On September 4, 1973, an opinion was issued in this case, CCH Fed.Sec.L.Rep. [1973 Transfer Binder] ¶ 94,137 (S.D.N.Y.1973) (*Faim I*), dismissing several of eighteen named defendants for lack of personal and subject matter jurisdiction. Plaintiffs, Faim Information Services, Inc. ("Faim"), W. G. Borchert Associates, Inc. ("Associates"), and Vernon Pope, Inc. ("Pope"), pursuant to Rules 54(b) and 60(b)(1) and (6) of the F.R.Civ.P., seek to have this court reconsider the earlier opinion and reinstate the dismissed defendants. The latter group, naturally, oppose the motion. In addition, several of the remaining defendants move to dismiss the complaint, or alternatively, for summary judgment, and they also oppose reconsideration.

*Background*

The complaint states three federal securities claims based on an apparent contract between William Borchert ("Borchert"), president, chairman of the board and chief executive officer of Associates, and Faim by which Faim agreed to purchase Associates. These claims allege that Borchert and others, in order to induce Faim and Associates

to enter into the contract, made untrue statements of material fact and failed to reveal certain other material facts. The remainder of the complaint, claims fourth through twelfth, allege violations of state law over which this court purportedly has pendent jurisdiction. These claims reassert the factual allegations of the first three claims but seek recovery under state law and additionally set forth a different set of facts which relate to the manner in which the contract was executed.

The eighteen named defendants are Borchert, directors and stockholders of Associates prior to the acquisition, key employees of plaintiffs after the acquisition by Faim, and other business entities having connections with certain of the previously-named individual defendants. The dismissed defendant Harper Sibley, Jr. ("Sibley") was a member of the board of Associates who, it was alleged, "together with Borchert, dominated and controlled its activities." Complaint, ¶ 4. Sibley's dismissal resulted from the absence of personal jurisdiction: he was a resident of Florida, he had no residence or business interests in New York State, and he was served with a summons and complaint in Florida. The notion was rejected that service was proper as to Sibley under New York's long-arm statute, CPLR § 302(a)(1) and (2), because Borchert acted as an agent for Sibley in making the contract with Faim, a New York corporation.

■■■ As stated in the first opinion, at 94,580–81, the rule in New York is that an out-of-state principal must exercise "domination and control" over the in-state agent in order for the principal to be subject to the jurisdiction of New York courts. *Stark v. Spitz*, 38 A.D.2d 966, 331 N.Y.S.2d 709 (2d Dep't 1972); *Hodom v. Stearns*, 32 A.D.2d 234, 301 N.Y.S.2d 146 (4th Dep't), *appeal dismissed*, 25 N.Y.2d 722, 307 N.Y.S.2d 225, 255 N.E.2d 564 (1969); *Legros v. Irving*, 77 Misc.2d 497, 354 N.Y.S.2d 47 (Sup.Ct.1973); *Marsh v. Kitchen*, 480 F.2d 1270 (2d Cir. 1973). No agency is inferable merely from the positions Sibley and Borchert held on the board. *Faim I, supra,* at 94,581; *cf. Ferrante Equipment Co. v. Lasker-Goldman Corp.,* 26 N.Y.2d 280, 283, 309 N.Y.S.2d 913, 916, 258 N.E.2d 202 (1970); *Bird v. Computer Technology, Inc.,* 364 F.Supp. 1336, 1340–41 (S.D.N.Y.1973).

The remaining dismissals of Sidney Shore ("Shore"), Sidney Gross ("Gross"), Sidney Shore, Inc. ("Shore, Inc."), Gross and Associates Public Relations, Inc. ("Gross, Inc.") and Conant & Co. Public Relations Inc. ("Conant") followed the determination that there was an insufficient nexus between the state claims in which these defendants were named and the federal claims over which this court has subject matter jurisdiction. Further, even if plaintiffs' "strained factual recitation" were deemed to satisfy the nexus requirement, I chose not to exercise the discretionary power of pendent jurisdiction in that case.

*The Reconsideration Motion*

■■■ Plaintiffs' motion may only proceed, if at all, pursuant to Rule 54(b) of the F.R.Civ.P. [1] Rule 54(b) is without

---

1. Rule 54(b) provides:
   "(b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just

reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of

limitation as to the grounds for revision; a district court may exercise this power when it is "consonant with justice to do so." *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973); *John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 90–91, 42 S.Ct. 196, 66 L.Ed. 475 (1922). Guidelines have qualified this broad rubric, however. A substantial issue must be raised for reconsideration which has been raised before, and "this will occur when the issue is one about which there is a high degree of disagreement. It can occur when a party presents new facts to be considered which were not raised in prior decisions or points to new decisional law not originally considered." *Nakhleh v. Chemical Construction Corp.*, 366 F.Supp. 1221, 1223 (S.D.N.Y.1973); *see Perth Amboy National Bank v. Brodsky*, 185 F.Supp. 219, 221 (S.D.N.Y.1960).

■ Plaintiffs contend that their former counsel failed to allege or brief a

"direct sale" of Sibley's stock in Associates to Faim; such "fact" of a direct sale would ostensibly make service on Sibley sufficient to confer jurisdiction upon this court. Contrary to this assertion, plaintiffs' counsel did brief the point. In their Memorandum in Opposition to Sibley's motion to dismiss, plaintiffs stated at 2:

"Defendant Sibley's memorandum incorrectly stated that, 'there are two separate and distinct transactions.' The fact is that Faim acquired Associates in a single transaction. While as a matter of form there was a sale to Faim by Borchert and a redemption by Associates from the other stockholders, all of the transactions were negotiated as a whole, were consummated on the same day, at the same time, at the same place, and none would have been consummated but for the consummation of the others. Sibley accepted consideration directly

judgment adjudicating all the claims and the rights and liabilities of all the parties." Rule 54(b), F.R.Civ.P.

By its terms, Rule 60(b)(1) and (6) applies only to final judgments or orders:

"(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." Rule 60(b), F.R.Civ.P.

Though dismissals for lack of personal jurisdiction and subject matter jurisdiction can be final for purposes of Rule 60(b), *Farrell v. Piedmont Aviation, Inc.*, 411 F.2d 812, 814–15 (2d Cir.) *cert. denied*, 396 U.S. 840, 90 S.Ct. 103, 24 L.Ed.2d 91 (1969); *Beverly Hills Federal Savings and Loan Association v. Webb*, 406 F.2d 1275 (9th Cir. 1969); *see* 6 J. Moore, *Federal Practice* ¶ 54.27[6], at 343–44 (2d ed. 1972), such dismissals remain interlocutory in the absence of the execution of a Rule 54(b) certificate by the district court. *Kaufman & Ruderman, Inc. v. Cohn & Rosenberger*, 177 F.2d 849, 850 (2d Cir. 1949); 6 Moore, *supra*, ¶ 54.-28[2], at 367–72.

It is doubtful that plaintiffs would succeed if Rule 60(b) were applicable. They have not made a single claim of mistake, inadvertence, surprise or excusable neglect, Rule 60(b)(1), nor shown any extraordinary circumstances, apart from those stated in (b)(1), for purposes of Clause (6). *United States v. Erdoss*, 440 F.2d 1221, 1223 (2d Cir.), *cert. denied*, 404 U.S. 849, 92 S.Ct. 83, 30 L.Ed.2d 88 (1971); *Rinieri v. News Syndicate Co.*, 385 F.2d 818, 822 (2d Cir. 1967). Nor is the motion timely. 7 J. Moore, *Federal Practice* ¶ 60.27[3], at 380 (2d ed. 1974).

from Faim in the form of 2500 warrants. It cannot possibly be said that he is involved solely in the redemption and not in the balance of the transaction."

Because the redemption of the Associates shares and the Borchert-Faim sale were separated by time, plaintiffs proceeded on an agency theory, specifically considered and rejected in *Faim I, supra,* at 94,581.

Moreover, the Acquisition Agreement, annexed to the complaint as Exhibit A, and the affidavits submitted by the board members and sole shareholders of Associates plainly show that there was no contemplation of a direct sale. The purchase agreement was solely between Faim and Borchert; neither Sibley nor the rest of the Associates directors were parties to the agreement, and no one, save Borchert, sold any shares to Faim. See affidavits of Doerge, Herzog, Gilligan, and Borchert. Borchert never represented to Faim that he spoke for the remainder of the board or for the other shareholders, Borchert affidavit, ¶ 5, and Faim itself must have been aware of this, for the agreement was expressly contingent on Borchert successfully persuading the board to redeem the outstanding shares held by everyone other than Borchert. The actual redemption occurred a week before the sale of Borchert's shares, which commanded a price that was 400% over that paid for the redeemed shares.[2]

Two recent cases cited by plaintiffs in support of the reinstatement of Sibley as a defendant are inapposite. One, *Barr v. Wackman,* 36 N.Y.2d 371, 368 N.Y.S.2d 497, 329 N.E. 180 (1975), is totally irrelevant, dealing only with the issue of whether a shareholder bringing a derivative action against a public corporation must first make a formal demand on the board where the alleged wrongdoers control a majority of the directors. The second, *Sterling Na-*

*tional Bank and Trust Co. v. Fidelity Mortgage Investors,* 510 F.2d 870 (2d Cir. 1975), considered the following acts: a loan was executed between a New York bank and a non-domiciliary trust; the loan was credited to the trust's account in the bank, where a compensating balance was maintained; later the loan was transferred to an account maintained by the trust in another New York bank; a promissory note executed by the non-domiciliary, the subject of the action, was made payable in New York; and finally, there was a visit by the vice-president of the trust to the officers of the bank in New York. The Court of Appeals found, looking at the totality of the trust's activities in New York, purposeful acts performed in New York in connection with the note which were sufficient to constitute the transaction of business for purposes of § 302(a)(1) of the long-arm statute. The case did not concern, nor did the court consider, any issue as to acts of an instate agent binding on an out-of-state principal.

As to the reinstatement of the remaining defendants dismissed for lack of subject matter jurisdiction, plaintiff has presented no new facts, cases or arguments to upset the original determination that no pendent jurisdiction existed between the federal claims and the eighth and twelfth state claims because of the total absence of a common nucleus of operative facts. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Moreover, plaintiffs do not even confront the decision that, even if the nexus requirement were met, the court would not as a matter of discretion exercise pendent jurisdiction. *Faim I, supra,* at 94,582–83.

■ These substantive failures aside, other considerations "consonant with justice" require the denial of the motion

2. The only other "new fact" raised, an April 7, 1971, letter relating to a tax return of Associates, has absolutely no relevance to the dismissal for lack of jurisdiction.

as well. Plaintiffs have waited almost a year and a half before bringing this motion. Plaintiffs chose not to move to reargue the decision within ten days of the filing of that decision, as prescribed by local Rule 9(m) of the General Rules of this court, nor did they seek entry of final judgment pursuant to Rule 54(b). Plaintiffs' apparent decision not to contest *Faim I* was reasonably relied upon by the dismissed defendants, who would be prejudiced by their reinstatement in an action which has proceeded without them for over a year and a half. The untimeliness of the motion coupled with its lack of merit warrants its denial.

### The Cleveland Group's Motion to Dismiss

Defendants John Doerge ("Doerge"), George Herzog ("Herzog"), Saunders, Stiver & Co. ("Saunders") and James Gilligan ("Gilligan") (herein "the Cleveland Group") move for dismissal of the complaint under Rule 12(b)(2) of the F.R.Civ.P. for lack of personal jurisdiction, under Rule 12(b)(6) for failure to state a claim, and pursuant to Rule 56 for a grant of summary judgment. The Cleveland Group, Sibley and Borchert owned all the issued and outstanding stock of Associates, and, together with Doerge as Saunders' president, comprised the board.

As sworn to in uncontroverted affidavits, none of the Cleveland Group resides or is found in New York, none conducts any business in this state, none has any interest in this state, and none

had any interest, conducted business or was a resident here at and before this action was commenced. All were served with a summons and complaint in either Ohio or Pennsylvania. Moreover, each one of the Cleveland Group, as well as Borchert, affirms that no agency relationship existed between the members of the board and Borchert. Since the facts involved in the motion to dismiss for lack of personal jurisdiction are identical with the facts presented by the Sibley motion in *Faim I*, the motion to dismiss the complaint against Doerge, Herzog, Gilligan and Saunders is granted.[3] This disposition obviates the need to consider the other motions by the Cleveland Group.

### Barrett, Haft, B–H and AEC's Motion to Dismiss

Defendants Walter Barrett ("Barrett") and Herbert Haft ("Haft"), key employees of Associates after its acquisition, defendants Barbor-Haft, Inc. ("B–H"), a New York corporation organized by Borchert, Barrett and Haft, and Artists Entertainment Complex, Inc. ("AEC"), the owner of B–H's stock, all join in a motion to dismiss the complaint for lack of subject matter jurisdiction.

Barrett and Haft, along with Shore and Gross, were named only in the eighth claim; AEC and B–H, along with Shore, Inc., Gross, Inc., and Conant, were named in the twelfth; additionally AEC and B–H are the sole defendants named in the eleventh claim. All three claims

3. Plaintiffs' protest that they are in no position to rebut the affidavits of the Cleveland Group because the latter have frustrated plaintiffs' discovery efforts is unavailing. The history of the litigation belies such an assertion, and instead illustrates that whatever predicament plaintiffs are in was the result of either conscious decision or folly. The time to answer the written interrogatories served on the moving defendants in November of 1972 was extended by successive stipulation until finally, by stipulation dated January 8, 1973, plaintiffs extended the time for defendants' answers to twenty days after

notice was given of the court's action regarding Sibley. No such notice was ever given by plaintiffs. Plaintiffs' new counsel, though "in" the case since May, 1974, neglected to become of record before serving Notice of Deposition and Notice to Produce Documents on the moving defendants in November of 1974, which Notices were properly refused. Finally, discovery was commenced on January 13, 1975, after plaintiffs' counsel was formally substituted, but discovery was then stayed at the end of January pending disposition of these motions.

are purportedly pendent to the federal claims, and are based on alleged acts of raiding occurring subsequent to the Borchert-Faim sale.

In the first opinion, it was held that the eighth and twelfth claims did not meet the nexus test of *Gibbs*:

> "It is manifestly evident that the necessary 'nucleus of operative fact' is entirely lacking in regard to these dissimilar claims. I must conclude, therefore, that the court is without jurisdiction over these state causes of action." *Faim I, supra,* at 94,582.

In addition, it was also decided that even if the test were satisfied, the court would nonetheless not exercise pendent jurisdiction for the following reasons:

> "The federal and state claims are sufficiently dissimilar as to minimize any overlap in proof and, therefore, judicial economy would not be substantially served nor would the burden on plaintiffs be substantially increased by separate trials. Furthermore, there is a real danger of prejudice to the individual defendants. Shore and Gross (named only in one claim) would be required to defend themselves before a jury in a complicated case involving eleven other claims, sixteen other defendants and proof of a wide variety of misdeeds other than those which they are claimed to have committed. Finally, the interests of comity and justice require that where, as here, the state law issues far exceed the federal questions, the local forum is the appropriate court of resolution." *Ibid.*

The situations of Barrett, Haft, AEC and B–H with respect to the eighth and twelfth claims are identical to those of the defendants who already had the two claims dismissed as to them. The eleventh claim, which alleges that AEC and B–H induced Borchert to breach his employment agreement with plaintiffs, is merely a variation of the twelfth claim; as with the eighth and twelfth claims, the professed inducement occurred subsequent to the factual net encompassing the federal claims.

Accordingly, the eighth, eleventh and twelfth claims are dismissed as to Barrett, Haft, AEC and B–H.

So ordered.